1 | NORMAN L. SMITH [SBN 106344]
nsmith@swsslaw.com
2 | TANYA M. SCHIERLING [SBN 206984]
tschierling@swsslaw.com
3 | SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
4 | San Diego, California 92101
Telephone: (619) 231-0303
5 | Facsimile: (619) 231-4755

6 | Attorneys for Petitioner
HANSEN BEVERAGE COMPANY

7

**FILED**

APR 0 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

08 CV 0619

10

11 | HANSEN BEVERAGE COMPANY, a
Delaware corporation,

CASE NO.

12 | 

**PETITION TO CONFIRM ARBITRATION
AWARD**[1]

13 | Petitioner,

14 | v.

15 | DSD DISTRIBUTORS, INC., a Wisconsin
corporation

16

17 | Respondent.

18

19

20

21

22

23

24

25

26

27 | [1]  Filed concurrently with Petitioner Hansen Beverage Company's *Ex Parte* Application To File Document
Under Seal.

28

P:00419531.3:07565.132

1    Pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, *et seq*, ("FAA"), Petitioner

2  Hansen Beverage Company ("Petitioner") hereby petitions this Court to confirm the Final

3  Award (the "Arbitration Award") rendered April 4, 2008 in the arbitration proceedings

4  between Petitioner and Respondent DSD Distributors, Inc. ("Respondent"), and to enter

5  judgment thereon. Petitioner concurrently applies *ex parte* for an order allowing it to file the

6  Arbitration Award under seal, as Exhibit 1 to this Petition, and will submit a copy of this

7  Petition and the Arbitration Award to the Court's chambers. In support of this Petition,

8  Petitioner alleges as follows:

9                                   **JURISDICTIONAL ALLEGATIONS**

10    1.    This Court has original jurisdiction of this matter based on diversity of

11  citizenship pursuant to 28 U.S.C. § 1332. Petitioner and Respondent are citizens of different

12  states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13    2.    Venue for this Petition is proper in the Southern District of California because

14  the Arbitration Award was rendered in this judicial district. The parties' written agreement

15  to arbitrate allows for judgment upon the Arbitration Award "in any court having

16  jurisdiction thereof." *See* Exhibit 2, Distribution Agreement (the "Agreement"), § 19.

17                                   **RELEVANT PROCEDURAL HISTORY**

18    3.    On April 25, 2007, Petitioner filed a demand for arbitration with JAMS in

19  Orange County, California in accordance with the arbitration provision in the Agreement.

20    4.    On May 15, 2007, Respondent appeared in the JAMS arbitration proceedings

21  (the "Arbitration") and has participated in the Arbitration since that date.

22    5.    The parties selected, and on June 4, 2007 JAMS appointed, Hon. J. Richard

23  Haden (Ret.) as Arbitrator. *See* Exhibit 3, Appointment of Arbitrator. Judge Haden is located

24  in JAMS's San Diego office, and case management for this matter was conducted exclusively

25  out of the JAMS San Diego office.

26    6.    The parties modified the arbitration locale specified in the Agreement by

27  agreeing to conduct the Arbitration, including filing pleadings and conducting motion

28  hearings and the evidentiary proceedings, exclusively at the JAMS San Diego office.

7.    The Arbitration took place January 22-25, 2008 before Judge Haden in the JAMS San Diego office, with both parties attending and represented by counsel.

8.    On April 4, 2008, the Arbitrator issued the Arbitration Award.

## CONFIRMATION BY THIS COURT IS APPROPRIATE

9.    Petitioner requests that this Court confirm the Arbitration Award pursuant to the FAA and the parties' contractual arbitration provision, which provides for judgment upon the Arbitration Award "in any court having jurisdiction thereof." Exhibit 2, Agreement, § 19.

10.    This Petition is timely because it is filed within one year after the Arbitration Award was made.

11.    The FAA, Section 9, states in pertinent part:  "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration" then any party to the arbitration may seek an order confirming the award by applying to the court specified in the parties' agreement or, if no court is specified, then "to the United State court in and for the district within which such award was made."  Upon such application, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." FAA, § 9.

## PRAYER

Petitioner prays that:

A.    This Court enter an order confirming the Arbitration Award, attached as Exhibit 1 and filed under seal, as authorized by Section 9 of the Federal Arbitration Act;

B.    This Court enter judgment upon the Arbitration Award; and

D.    For any and all other relief that the Court deems just and proper.

DATED: April 4, 2008                    SOLOMON WARD SEIDENWURM & SMITH, LLP

By: _Tanya Schierling_

TANYA M. SCHIERLING
Attorneys for Petitioner
HANSEN BEVERAGE COMPANY

HANSEN BEVERAGE COMPANY
DISTRIBUTION AGREEMENT

AGREEMENT, made as of this 1ST day of DECEMBER, 2004, between HANSEN BEVERAGE COMPANY ("HBC"), with offices at 1010 Railroad Street, Corona, California 92882, and DSD DISTRIBTUORS INC. ("Distributor"), with offices at 607 SOUTH ARCH STREET JANSVILLE, WI 53548.

1.    Definitions. When used herein, (a) the word "Products" means those products identified in Exhibit A hereto with an "X"; (b) the word "Territory" means the territory identified in Exhibit B hereto; (c) the word "Accounts" means those accounts identified in Exhibit C hereto; and (d) the word "Trademarks" means those names and marks identified on Exhibit D hereto.

2.    Appointment.

(a)    HBC appoints Distributor, and Distributor accepts appointment, as a distributor of Products only to Accounts within the Territory. Such appointments may be either exclusive or non-exclusive, as the case may be, as designated on Exhibit C hereto. Unless otherwise agreed by HBC, Distributor specifically covenants not to sell or otherwise transfer in any manner any Products except to Accounts within the Territory. The Distributor shall be entitled to appoint sub-distributors within the Territory provided that the terms of such appointments shall not be inconsistent with the terms and conditions of this Agreement and shall be subject to HBC's rights hereunder.

(b)    Distributor hereby agrees not to sell, transfer and/or assign any Products, either directly or indirectly, to any other persons and/or entities located outside the Territory nor to any persons and/or entities within the Territory with regard to whom Distributor has knowledge or reasonable belief will distribute and/or sell the Products outside of the Territory.

(c)    Distributor acknowledges and agrees that it has no right to distribute any products of HBC other than the Products identified in Exhibit A hereto with an "X". Any sales by HBC to Distributor of any products of HBC other than the Products identified in Exhibit A with an "X" and/or that are not listed on Exhibit A, and/or any Products sold by HBC to Distributor and/or its subdistributor/s beyond the scope, term or after the termination of this Agreement, with or without cause, for any reason or no reason at all (i) shall not constitute, be construed as, or give rise to, any express or implied Distribution Agreement, course of conduct or other relationship between HBC and Distributor; (ii) shall not confer upon Distributor or its subdistributor/s any rights of any nature whatsoever, including without limitation to purchase and/or sell or continue to purchase and/or sell any products, including Products, or use the Trademarks other than with respect to Products sold and delivered by HBC to the Distributor and (iii) shall constitute a separate transaction for each shipment of products actually delivered by HBC to Distributor and/or subdistributor/s, at HBC's sole and absolute discretion, which HBC shall be entitled to exercise, vary, withdraw and/or cease, on a case by case basis, at any time in HBC's sole and absolute discretion. Distributor irrevocably waives, releases and discharges any claims, liabilities, actions and rights, in law or in equity, against HBC including without limitation for damages, compensation or severance payments or any other claims of whatsoever nature to Distributor arising from or in connection with the matters referred to in this section 2(c) and/or any acts, omissions or conduct of HBC.

3.    Distributor's Duties. Distributor shall:

(a)    vigorously and diligently promote and achieve the wide distribution and sale of Products to Accounts within the Territory to the reasonable satisfaction of HBC; Distributor shall permit HBC representatives to work sales routes with the Distributor's salesmen;

(b)    secure extensive in-store merchandising and optimal shelf positioning with respect to Products in Accounts within the Territory to the reasonable satisfaction of HBC;

12.1.4 DSD Distributors Inc.                    - 1 -
(R 12/27/02)

DSDARB 0001

*Busted*
EXHIBIT NO.    8
9-19-07    RPTR BB
For the Record, Inc.

(c)    perform complete and efficient distribution functions throughout the Territory to the reasonable satisfaction of HBC;

(d)    fully implement and execute the annual marketing plans to be agreed upon from time to time in accordance with Clause 13 below and achieve and maintain where appropriate all of the objectives set with respect thereto; and

(e)    achieve and maintain the minimum distribution levels relating to Products as set forth on Exhibit B hereto during the initial term and achieve and maintain the agreed minimum distribution levels relating to Products in respect of each renewal term in accordance with Clause 15 below.

(f)    provide HBC on or before the tenth (10th) day of each calendar month with a schedule showing for the previous month (i) sales by flavor and package, (ii) number of new accounts opened, (iii) aggregate number of active accounts for Product; and

(g)    maintain in strict confidence all commercial information disclosed by HBC to Distributor (which obligation shall expressly survive termination of this Agreement for any reason).

4.    Prices. The prices of Products shall be as set forth in HBC's then current price list as the same may be changed from time to time by HBC upon written notice to Distributor.

5.    Orders. All purchase orders for Products shall be in writing and shall be subject to acceptance by HBC. All such purchase orders shall be deemed acceptances of HBC's offers to sell Products and shall limit acceptance by Distributor to the terms and conditions thereof.

6.    Payment. Distributor shall promptly pay the prices of Products in full (without deduction or set-off for any reason) in accordance with the payment terms set forth in HBC's invoice. If Distributor is delinquent in payment, upon presentation of invoice, Distributor shall reimburse HBC for any costs and expenses incurred by HBC in collecting such delinquent amounts, including, without limitation, legal expenses, interest at 1% per month or part thereof from the due date(s), and fees of collection agencies.

7.    Security Interest. HBC reserves, and Distributor grants to HBC, a security interest in Products sold to Distributor on credit (if any). Distributor acknowledges that this Agreement constitutes a security agreement between HBC, as secured creditor, and Distributor, as debtor, for the purposes of the Uniform Commercial Code. Distributor agrees to execute and deliver to HBC such financing statements and other instruments as HBC may reasonably request in order to perfect its security interest.

8.    Delivery. Unless otherwise agreed in writing by the parties, Products will be tendered by HBC for delivery to Distributor in full truckload quantities. Distributor acknowledges that delivery dates set forth in purchase orders for Products accepted by HBC are merely approximate and that HBC shall have no liability for late deliveries.

9.    Trademarks.

(a)    Distributor shall not use any trademark, brand name, logo or other production designation or symbol in connection with Products other than Trademarks. Distributor acknowledges that it has no right or interest in Trademarks (except as expressly permitted hereunder) and that any use by Distributor of Trademarks will inure solely to HBC's benefit. Distributor may only use Trademarks in strict accordance with HBC's policies and instructions, and HBC reserves the right, from time to time and any time, at its discretion, to modify such policies and instructions then in effect.

(b)    Any proposed use by Distributor of Trademarks (to the extent that it either has not been previously approved by HBC or differs materially from a use previously approved by HBC) shall be subject to the prior written consent of HBC. Distributor shall submit to HBC in writing each proposed use of Trademarks in any medium.

(c)    Distributor shall not at any time alter Trademarks or the packaging of Products, use Trademarks for any purpose other than the promotion, advertising and sale of Products hereunder, or challenge the validity, or do or refrain from doing any act which might result in impairment of the value, of Trademarks.

DSDARB 0002

(d)    Upon the termination hereof, Distributor shall cease and desist from the use of the Trademarks and any names, marks, logos or symbols similar thereto.

10.    Promotion.  Distributor shall be solely responsible for marketing and promoting Products within the Territory.  Distributor shall aggressively distribute and encourage the utilization of merchandising aids and promotional materials in outlets throughout the Territory.  Without in any way detracting from the foregoing, Distributor shall participate in and diligently implement all marketing and promotional programs and campaigns that may be agreed to by both Distributor and HBC and which HBC may agree to fund jointly with Distributor on a co-op basis, from time to time.

11.    Term and Termination.

(a)    The initial term of this Agreement shall commence on December 1, 2004 and shall end on December 31, 2005.  Upon the expiration of the initial term, this agreement shall be automatically renewed for additional terms of one year at a time, up to a maximum of fifteen (15) additional one-year terms; provided always that the Distributor (i) is not in breach of any of the provisions of this Agreement, (ii) has fulfilled all of its obligations hereunder, and (iii) has agreed with HBC with respect to the minimum distribution levels and/or annual marketing plan for the forthcoming term, as the case may be, in accordance with Clause 13 below.  If all such requirements are not met, then this Agreement shall terminate at the expiration of the then current term.

(b)    Either party may terminate this Agreement at any time upon written notice if the other party:

(i)    commits a breach of any of the provisions hereof, or

(ii)    sells all or substantially all of its assets or outstanding shares of stock entitled to vote, or

(iii)    files or has filed against it a petition in bankruptcy, is adjudicated insolvent or bankrupt, makes a general assignment for the benefit of creditors, or has a receiver or trustee appointed for it or for the administration of its assets.

(c)    In the event of the termination of this Agreement for any reason whatsoever (and whether such termination is due to the breach of any of the provisions of this Agreement by any party and/or itself is in breach of the Agreement or otherwise):

(i)    HBC shall have the right to cancel all of Distributor's purchase orders for Products accepted but remaining unfilled as of the date of termination;

(ii)    all amounts payable by Distributor to HBC shall be accelerated and shall immediately become due; and

(iii)    neither party shall be liable to the other party in contract, tort or on any other theory of liability for any damage, loss, cost or expense (whether general, special, indirect, incidental, consequential or punitive) suffered, incurred or claimed by the other party as a result of or related to such breach and/or termination (even if the termination results from a breach and the breaching party has been advised of the possibility of such damages), including, without limitation, loss of anticipated profits or goodwill, loss of or damage to goodwill or business reputation or any loss of investments or payments made by either party in anticipation of performing under this Agreement.

12.1.4 DSD Distributors Inc.                    – 3 –
(R 12/27/02)

(d)    In the event HBC continues to supply Products to Distributor for any reason following the termination of this Agreement, Distributor understands and acknowledges that any such action shall not constitute a waiver of HBC's rights under this Agreement or a reinstatement, renewal or continuation of the term of this Agreement. HBC and Distributor agree that if HBC continues to supply Products to Distributor following the termination of this Agreement, (I) Distributor shall be prohibited from selling or otherwise transferring Products except to Accounts within the Territory, (II) Distributor shall promptly pay the prices of the Products in full (without deduction or set-off for any reason) in accordance with the payment terms set forth in HBC's invoice, and (III) HBC shall have the right, in its sole discretion, to discontinue supplying Products to Distributor at any time, without notice to Distributor.

(e)    Should HBC or any successor to HBC terminate this Agreement without cause, namely, otherwise than pursuant to the express provisions of this Agreement then, provided that the Distributor shall not be in breach of any of the provisions of this Agreement, HBC or its successor, as the case may be, shall be liable to pay to Distributor a severance payment calculated as follows: $3.00 per 24-pack case (reduced on a pro rata basis for cases that contain less than 24 units, i.e. 12-pack cases, but excluding any free units) of *energy* Products in 8-oz., 16-oz. and 23.5-oz. cans and $1.50 per 24-pack case (reduced on a pro rata basis for cases that contain less than 24 units, but excluding any free Products) of all other Products, sold by Distributor during the most recently completed twelve (12) month period ending on the last day of the month preceding the month in which the Agreement is terminated, less the amount, if any, Distributor may receive from any assignee of its rights under this Agreement.

12.    Option. HBC shall have the option, exercisable upon written notice to Distributor within thirty (30) days after the date of termination hereof, to repurchase all Products in Distributor's inventory at the prices therefor paid or payable by Distributor (less any freight and insurance charges), P.O.B., Distributor's premises.

13.    Annual Marketing Plans. Not less than 60 days before the end of then current term HBC and Distributor shall mutually review the conditions of the marketplace, Distributor's efforts to achieve sales and its results as well as the proposed annual marketing plan which is to be prepared by Distributor and agree on the annual marketing plan, which shall include sales and other objectives and minimum distribution levels to be achieved and maintained by Distributor, for the forthcoming term of this Agreement.

Minimum Distribution Levels. Not less than 60 days before the end of the then current term HBC and Distributor shall mutually agree on the minimum distribution levels for the forthcoming term of this Agreement.

14.    The provisions of this clause shall apply only to accounts that have been assigned exclusively to Distributor in terms of Exhibit C hereto. Distributor agrees that should HBC wish to supply Products to any National Account (which shall mean a customer that sells at retail in more than one Territory), HBC shall be entitled to make arrangements directly with such customer and establish the terms of sale of Products to such customer and the prices therefor, which shall take into account the prices then being offered by Distributor and/or other Distributors within whose Territory the customer has Outlets, to such customer or similar categories of customer. Should such customer have one or more outlets within the Territory ("Outlets"), and agree to Outlets being serviced by Distributor, Distributor agrees to service the Outlets in accordance with such arrangements and on the same terms and at the same prices as HBC shall have agreed with the customer concerned. Notwithstanding the foregoing, Distributor shall be entitled to elect not to service the Outlets by giving prompt written notice of such election to HBC. Should the customer not agree to the Outlets being serviced by Distributor or should Distributor elect not to service the Outlets, HBC shall be entitled to service the Outlets directly. In the event HBC services the Outlets directly, HBC shall pay to Distributor, during the remaining term of this Agreement, $0.50 per 24-pack case (reduced on a pro rata basis for cases that contain less than 24 units, excluding any free units) of *energy* Products in 8-oz., 16-oz. and 23.5-oz. cans and $0.25 per 24-pack case (reduced on a pro rata basis for cases that contain less than 24 units, excluding any free units) of all other Products, sold by HBC to the Outlets; provided that Distributor shall have achieved and maintained the agreed distribution levels within the Territory. For the purposes of this Agreement, the number of cases of Products sold by HBC to the Outlets during any period shall be determined by multiplying the total number of cases of products sold by HBC directly to such customer or regional division of such customer, as the case may be, during the period concerned, by a fraction, the numerator of which shall be the number of Outlets and the denominator of which shall be the total number of Outlets that the customer has within the United States or within the regional division of such customer, as the case may be.

DSDARB 0004

15.    Amendment. Except to the extent otherwise expressly permitted by this Agreement, no amendment of this Agreement shall be effective unless reduced to a writing executed by the duly authorized representatives of both parties.

16.    Assignment. Distributor may not assign its rights or delegate its obligations hereunder without the prior written consent of HBC. Any purported assignment or delegation by Distributor, in the absence of HBC's written consent, shall be void.

17.    No Agency. The relationship between HBC and Distributor is that of a vendor to its vendee and nothing herein contained shall be construed as constituting either party the employee, agent, partner or coventurer of the other party. Neither party shall have any authority to create or assume any obligation binding on the other party.

18.    Governing Law. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California (without reference to its law of conflict of laws).

19.    Arbitration. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach or termination hereof shall be settled by binding arbitration conducted by JAMS/Endispute, ("JAMS") in accordance with JAMS Comprehensive Arbitration Rules and Procedures (the "Rules"). The arbitration shall be heard by one arbitrator to be selected in accordance with the Rules, in Orange County, California. Judgment upon any award rendered may be entered in any court having jurisdiction thereof. Within 7 calendar days after appointment the arbitrator shall set the hearing date, which shall be within 90 days after the filing date of the demand for arbitration unless a later date is required for good cause shown and shall order a mutual exchange of what he/she determines to be relevant documents and the dates thereafter for the taking of up to a maximum of 5 depositions by each party to last no more than 2 days in aggregate for each party. Both parties waive the right, if any, to obtain any award for exemplary or punitive damages or any other amount for the purpose of imposing a penalty from the other in any arbitration or judicial proceeding or other adjudication arising out of or with respect to this Agreement, or any breach hereof, including any claim that said Agreement, or any part hereof, is invalid, illegal or otherwise voidable or void. In addition to all other relief, the arbitrator shall have the power to award reasonable attorneys' fees to the prevailing party. The arbitrator shall make his or her award no later than 7 calendar days after the close of evidence or the submission of final briefs, whichever occurs later.

20.    Merger. This Agreement supersedes all prior oral and written communications between the parties concerning, and constitutes their sole and exclusive understanding with respect to, the subject matter hereof.

21.    Waivers. No waiver of any provision hereof or of any terms or conditions established by HBC will be effective unless in writing and signed by the party against which enforcement of the waiver is sought.

22.    "Competitive Products. Distributor shall not sell, market or distribute any products likely to compete with or be confused with any of the Products, during the term of this agreement.

23.    HBC represents that no products shall, on the date of purchase or delivery, be adulterated or misbranded or unsafe within the meaning of the Federal Food Drug and Cosmetic Act, including all provisions and amendments pertaining thereto from time to time. HBC indemnifies Distributor and its agents from and against all/or any damages for personal injuries and property damage, including reasonable attorney's fees, resulting from any impurity, adulteration, deterioration in or misbranding of products delivered to Distributor; provided that Distributor gives HBC written notice of any indemifiable claim and Distributor does not settle any claim without HBC's prior written consent. HBC represents that its maintains and will continue to maintain, at its own cost, product liability insurance in the minimum amount of $2,000,000. HBC will supply proof of same to Distributor within a reasonable time after written request therefore from Distributor.

24.    Interpretation. In the event of any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. No provision of this Agreement shall be construed against any party on the grounds that such party or its counsel drafted that provision

12.1.4 DSD Distributors Inc.                    – 5 –
(R12/27/02)

25.    Severability. If any provision of this Agreement is held invalid for any reason by a court, government agency, body or tribunal, the remaining provisions will be unaffected thereby and shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement as of the date first above written.

HANSEN BEVERAGE COMPANY                           DSD DISTRIBUTORS INC.
("HBC")                                            ("Distributor")

By:_____                               By:_____
Its:  Chairman                                      Its:  President

12.1.4 DSD Distributors Inc.                 - 6 -
(R 12/27/02)

DSDARB 0006

EXHIBIT A

## THE PRODUCTS

| X | Hansen's energy Original Formula 8.3-oz Cans |
|---|---|
| X | Hansen's Energade 23.5-oz Cans |
| X | Hansen's Energy Deuce 16-oz Cans |
| X | Hansen's Energy Pro 16-oz Cans |
| X | Lost Energy 16-oz Cans |
| X | Assault Monster Energy 16-oz Cans |
| X | Monster Energy 16-oz Cans |
| X | Lo-Carb Monster Energy 16-oz. Cans |

To the extent HBC has supplied or may agree to supply any Product to Distributor which is not listed above, it is understood that Distributor's right to sell such Product is limited to that specific transaction only. No course of conduct or usage of trade may be relied upon or construed to create any obligation on HBC to sell or continue to sell such Product/s to Distributor nor shall the same create any right in favor of Distributor.

HBC reserves the right to secure an alternate Distributor or distribution process for any Products that are not actively promoted or sold.

DSDARB 0007

EXHIBIT B

## THE TERRITORY

State of Wisconsin, Counties of:

Jefferson
Rock

In Dane County, the portion East of Edgerton Road to Lake Koshkonong and Bingham Road and South of Highway 106 to the Rock County Line.

In Dodge County, the cities/towns of: Old Lebanon, Old Ashippun, New Ashippun, Clyman, Richwood, Shield, Emmett and Watertown.

DSDARB 0008

EXHIBIT C

THE ACCOUNTS

| Account Type | Distributor Exclusive | Distributor Non-exclusive | Reserved for HBC |
|---|---|---|---|
| Convenience Stores | X | | |
| Chain Convenience Stores | X | | |
| Deli's | X | | |
| Independent Grocery | X | | |
| Chain Grocery | X | | |
| Mass Merchandisers | X | | |
| Drug Stores | X | | |
| Schools | X | | |
| Hospitals | X | | |
| Health Food Stores | X | | |
| Military | X | | |
| Alcoholic Lic. On-Premise | X | | |
| Trader Joe's | | | X |
| Club Stores | X | | |

DSDARB 0009

EXHIBIT D

## THE TRADEMARKS

| | |
|---|---|
| HANSEN'S | HANSEN'S ENERGY |
| HANSEN'S NATURAL | HANSEN'S ENERGY (DESIGN) |
| CALIFORNIA'S NATURAL CHOICE | ENERGY |
| HANSEN'S NATURAL SODAS | A NEW KIND 'A BUZZ |
| HANSEN'S PREMIUM SIGNATURE SODAS | ENERGY HYDRATION SYSTEM |
| CALIFORNIA'S CHOICE | SLIM DOWN |
| EQUATOR | LOST |
| IMPORTED FROM NATURE | LOST ENERGY |
| LIQUID FRUIT | LOST ENERGY DRINK |
| IT'S JUST GOOD | THE "PLANET" LOGO |
| THE REAL DEAL | ENERGADE |
| E$_2$0 ENERGY WATER | RED ROCKER |
| MONSTER ENERGY | MONSTER |
| HANSEN'S E$_2$0 ENERGY WATER | BLUE SKY |
| STAMINA | MEDICINE MAN |
| ANTIOX | |
| D.STRESS | |
| POWER | |
| HEALTHY START | |
| IMMUNEJUICE | |
| INTELLIJUICE | |
| ANTIOXJUICE | |
| VITAMAXJUICE | |
| DYNAJUICE | |
| POWERPACK | |

DistAgr.3

(R 12/27/02)

10

DSDARB 0010

EXHIBIT E

## ANNUAL MARKETING PLAN

| PRODUCTS | ACCOUNTS PURCHASING | % of TOTAL ACCOUNTS | ANNUAL CASE SALES |
|---|---|---|---|
| Energy Original Formula | * | * | * |
| Energade | * | * | * |
| Energy Deuce | * | * | * |
| Energy Pro 16-oz Cans | * | * | * |
| Lost Energy | * | * | * |
| Assault Monster Energy | * | * | * |
| Monster Energy | * | * | * |
| Lo-Carb Monster Energy | * | * | * |

\* To be agreed for the 2005 calendar year, on or before December 31, 2004.

Percentage of Available Accounts is defined as the total number of Accounts that purchased each of the Products listed above in any 60-day period divided by the total number Available of Accounts that purchased any product from the Distributor in the same 60-day period.

In the event that HBC and Distributor fail to agree on an Annual Marketing Plan for any current term on or before the commencement of such term, HBC shall be entitled, but not obligated, in it's sole discretion, to elect to establish a reasonable Annual Marketing Plan for such term.

DSDARB 0011



THE RESOLUTION EXPERTS

# APPOINTMENT OF ARBITRATOR

June 4, 2007

NOTICE TO ALL PARTIES
(Please See Service List)

      Re:    Hansen Beverage Company vs. DSD Distributors, Inc.
                Reference #: 1200039281

Dear Parties:

Hon. Richard Haden (Ret.) has been appointed as Arbitrator in the above-referenced matter.
Please note that in accordance with the JAMS Comprehensive Rules and Procedures no party
may have *ex-parte* communications with the Arbitrator. Any necessary communication with the
Arbitrator must be initiated through the case manager.

Hon. Richard Haden (Ret.) shall bill as indicated in the attached fee schedule. JAMS may also
reassess the case management fee based on the number of hours of service. Each party will be
assessed a pro-rata share of all fees and expenses. The parties may, however, agree to apportion
the hearing fees among themselves as they deem appropriate. Under appropriate circumstances,
the Arbitrator may award against any party JAMS' fees and expenses. JAMS' agreement to
render services is not only with the parties, but extends to the attorney or other representative of
the parties in the arbitration.

I will be in contact with all parties shortly to schedule a Preliminary Arbitration Management
Conference Call.

Sincerely

Jenny M. Griffin
Case Manager
jgriffin@jamsadr.com
Direct: 619-237-0805

**JS 44**
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

HANSEN BEVERAGE COMPANY, a Delaware corporation

## DEFENDANTS

DSD DISTIBUTORS, INC, a Wisconsin corporation

**FILED**
APR 0 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Riverside
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Rock County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Norman L. Smith, Esq. (SBN 106344)
Solomon Ward Seidenwurm & Smith, LLP
401 B Street, Suite 1200
San Diego, CA 92101
(619) 231-0303

ATTORNEYS (IF KNOWN)

'08 CV 0619 LAB RBB

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR
(For Diversity Cases Only)     PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business in This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business in Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)    9 U.S.C. Section 2, et seq., Petition to
Confirm Arbitration Award per Federal Arbitration Act.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (13958) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty [ ] 540 Mandamus & Other | [ ] 790 Other Labor Litigation | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | [ ] 791 Empl. Ret. Inc. Security Act | | [x] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23     DEMAND $ n/a

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] YES  [x] NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____     Docket Number _____

DATE  4/4/08

SIGNATURE OF ATTORNEY OF RECORD  *Tanya Schierling*

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

CR 149423   $350   4/4/08