RICHARD E. MCCARTHY [SBN 106050]
rmccarthy@swsslaw.com
TANYA M. SCHIERLING [SBN 206984]
tschierling@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for Petitioner
HANSEN BEVERAGE COMPANY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, a Delaware corporation,<br><br>Petitioner,<br><br>v.<br><br>DSD DISTRIBUTORS, INC., a Wisconsin corporation<br><br>Respondent. | CASE NO. 08-CV-0619 LAB (RBB)<br><br>**HANSEN BEVERAGE COMPANY'S OPPOSITION TO MOTION TO DISMISS OR STAY PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Date: June 9, 2008<br>Time: 11:15 a.m.<br><br>Hon. Larry A. Burns |

P:00427200.5:07565.132

OPPOSITION TO MOTION TO DISMISS OR STAY

# I.

# SUMMARY OF OPPOSITION

Petitioner Hansen Beverage Company ("Hansen") filed this action on April 4, 2008 to confirm a Final Award issued by the Arbitrator, Retired Judge J. Richard Haden, in San Diego, California on April 4, 2008. Respondent DSD Distributors, Inc. ("DSD") seeks to dismiss or stay this action, contending (erroneously) that the amount in controversy is "zero" and that the appropriate forum for post-arbitration proceedings (including DSD's attempt to reopen the Final Award and resume chasing a substantial damage award) is Wisconsin.

DSD's motion fails on all fronts. Subject matter jurisdiction exists because the parties are diverse (an undisputed fact) and the amount in controversy—the pecuniary value of the Final Award—exceeds the jurisdictional threshold. Abstention or deferral to proceedings in Wisconsin is not appropriate because review of the Final Award implicates **California's** strong public policy concerning arbitration. Further, DSD's action in Wisconsin—on which it relies for its "first filed" argument—was initiated in flagrant contravention of its undisputed contractual obligation to arbitrate. Finally, the Wisconsin court has formally deferred to **this Court** for action on the Final Award.

# II.

# RELEVANT FACTS AND PROCEDURAL HISTORY

## A. The Parties' Written Agreement to Arbitrate

In December 2004, DSD signed a written Distribution Agreement (the "Distribution Agreement") with Hansen, pursuant to which the parties agreed to arbitrate **in California**[1] any and all disputes arising out of the Distribution Agreement. *See*, a copy of the Distribution Agreement, § 19, Exhibit 2 to the Declaration of Tanya M. Schierling In Support of Petition to Confirm Arbitration Award and *Ex Parte* Application To File Document Under Seal, previously filed on April 4, 2008 ("Schierling Decl. #1"). Arbitration is to be

---

[1] Though Hansen is incorporated in Delaware, as the Distribution Agreement evidences, Hansen operates out of its headquarters in Corona, California.

1 conducted by JAMS/Endispute ("JAMS"). *Id.*

2 When disputes arose between the parties in or about April 2007 concerning potential termination of the Distribution Agreement, Hansen commenced arbitration with JAMS in Orange County, California, in accordance with the Distribution Agreement's express terms. Schierling Decl. #1, ¶ 2.

**B.  DSD's Attempted End-Run Around Arbitration**

DSD tried its best to avoid its obligation to arbitrate. In July 2007, DSD filed suit in the Circuit Court for Rock County, Wisconsin (the "Wisconsin Court Action"), seeking declaratory and injunctive relief against Hansen for claims arising out of the Distribution Agreement. *See,* a copy of DSD's Complaint in the Wisconsin Court Action, Exhibit 2 to the Declaration of Tanya M. Schierling In Support of Hansen Beverage Company's Opposition to the Motion to Dismiss or Stay ("Schierling Decl. #2"). Hansen defeated DSD's ill-conceived effort, pointing out to the Wisconsin court that, pursuant to the Distribution Agreement, DSD had no right to bring its claims into court. Instead, DSD had contractually agreed to resolve any such claims in arbitration.

The Wisconsin court agreed and issued an order staying that action to permit arbitration. *See* Exhibits "C" and "D" to the Declaration of Leila Nourani filed in this action ("Nourani Decl."), copies of Hansen's Motion to Dismiss or Stay the Wisconsin Court Action and the court's Order granting the motion. Notably, contrary to DSD's creative interpretation of the record, Hansen did not seek (and the Wisconsin court did not issue) any order compelling DSD to arbitrate its claims or referring those claims to the arbitration then pending in California. (Indeed, it is doubtful that the Wisconsin state court even had the jurisdictional reach to compel a party to arbitrate **in California**.) DSD then brought its affirmative claims against Hansen in the arbitration.

**C.  The Arbitration Proceedings**

The parties selected and JAMS appointed Judge J. Richard Haden, Ret., as Arbitrator. Judge Haden is based out of JAMS' San Diego office and, thereafter, all arbitration proceedings were conducted at the JAMS San Diego office. Schierling Decl. #1, ¶¶ 4-7.

1  The evidentiary hearing took place in January 2008 over a period of four days and, following post-hearing briefing, Judge Haden issued his Final Award on April 4, 2008. Schierling Decl. #1, ¶ 8 and Exhibit 1 thereto, a copy of the Final Award, filed under seal.

### D.  The Final Award in Arbitration

In pertinent part, the Final Award decided, in DSD's favor, that DSD's distributorship could not be terminated by Hansen.  DSD valued its existing Hansen distribution rights at approximately $850,000.  Schierling Decl. #2, ¶¶5-6 and Exhibit 4 thereto, a copy of DSD's Expert Report entitled "Calculation of Damages to DSD Distributors, Inc. Resulting From Loss of the Right to Distribute Products of Hansen Beverage Company" ("DSD's Expert Report"), filed under seal.  It is quite troubling, therefore, that DSD represents to this Court that the value of the Final Award in its favor on this claim is "zero."

To be sure, the Final Award denied DSD's prayer for monetary damages for termination of the Distribution Agreement, finding that Hansen had not actually or constructively terminated the parties' distribution relationship or agreement.  But, critically, the Final Award also affirmatively pronounced DSD's entitlement to the protections of a Wisconsin statute, the Wisconsin Fair Dealership Law ("WFDL"), denying Hansen the commercial right and freedom to terminate the Distribution Agreement as it was entitled to do under the express terms of the Distribution Agreement and California law (the choice-of-law provided in the Distribution Agreement[2]).  This dispute—whether DSD enjoys the protections of the WFDL—was a hard-fought battle; a cause that DSD championed and continues to champion to this day[3]; and a contested issue that both parties expended considerable, if not the majority, of their resources and time on in discovery and during the proceedings.  Surely DSD would not have gone to such lengths to vindicate rights that have no value.

---

[2] *See* Distribution Agreement, § 18, Exhibit 2 to Schierling Decl. #1.
[3] DSD's motion here proclaims, "Wisconsin law is extraordinarily protective of distributors and dealers. This is manifested in the Wisconsin Fair Dealership Law ('WFDL')" and then proceeds to detail the purposes and protections of that statute.  DSD's Motion, at 2-3.

P:00427200.5:07565.132                           3
OPPOSITION TO MOTION TO DISMISS OR STAY

**E.     DSD's Failed Post-Award Challenge in the Wisconsin Court Action**

DSD has continued its fight to capitalize on its rights under the WFDL. Unhappy with the Arbitrator's findings that Hansen has not terminated the Distribution Agreement and therefore DSD has suffered no damages (which DSD claimed exceeded $2 million), DSD asked the Wisconsin court to overrule the Arbitrator and issue contrary findings. On April 4, 2008 (the day the Final Award was issued and the day Hansen filed its petition to confirm in this Court), DSD filed a motion in the Wisconsin Court Action seeking partially to vacate the Final Award. *See* Exhibit 1 to Schierling Decl. #2, a copy of DSD's motion for partial vacation. DSD sought only partial vacatur, of course, because it wishes to preserve the Final Award's valuable determination that DSD is entitled to WFDL protections. That determination is the cornerstone and predicate to the further relief DSD sought.

On April 30, 2008, apprised of Hansen's petition in this action, the Wisconsin court issued a ruling declining to entertain DSD's motion, **specifically and formally deferring to this Court**. *See* Exhibit 3 to Schierling Decl. #2, a copy of Judge Forbeck's April 30 ruling. Judge Forbeck stated definitely: "the arbitration should be completed and finalized in the Federal Court in the State of California without intervention of this Court."

Of course, DSD has the unfettered right, and Hansen fully expects DSD, to assert in this action the same challenges to the Final Award that it attempted to raise in the Wisconsin court. The relief DSD seeks—overturning the Arbitrator's denial of damages and, instead, entering an award of damages in accordance with DSD's expert's testimony (approximately $1.7 Million[4])—only further reinforces the conclusion that the "amount in controversy" in this action satisfies jurisdictional requirements.

### III.

### THIS COURT HAS SUBJECT MATTER JURISDICTION

---

[4]   DSD's expert valued its existing distribution rights at approximately $850,000. He then added an additional approximately $850,000 to the damage figure for the value of expanded distribution rights covering new products Hansen introduced to the marketplace in April 2007, but which Hansen had not appointed DSD to distribute. Schierling Decl. #2, ¶¶ 5-6 and Exhibit 4 thereto, a copy of DSD's Expert Report.

1  It is undisputed that the parties are diverse.  DSD only contends that the action does
2  not satisfy the $75,000 amount in controversy requirement for diversity jurisdiction.  DSD's
3  argument is transparent and wrong.  The amount in controversy, established by DSD's own
4  evidence, is at least $850,000.

**A.     The Amount of the Award**

In *Goodman v. CIBC Oppenheimer*, 131 F.Supp. 2d 1180 (C.D. Cal. 2001), the United States District Court for the Central District of California held that for purposes of a petition to confirm or vacate an arbitration award, "the amount in controversy is the amount of the award." *Id*. at 1184.  The Court rejected the petitioner's argument that the amount in controversy is the original amount sought in arbitration.  *Id*.[5]  The petitioner in *Goodman* had sought $3,000,000 in damages in the arbitration proceedings, but was awarded only $74,000 and change.  *Id*.

Unlike this case, however, *Goodman* did not involve an arbitration award that, in addition to deciding claims for monetary recovery, also issued significant and valuable declaratory relief.  It is well settled that the amount in controversy on a declaratory relief claim "is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *accord Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405, n.6 (9th Cir. 1996).  Pursuant to this analysis, the amount of the Final Award here is <u>not</u> zero.  Though the Final Award awards DSD nothing on its damages claim, it also affirmatively declares that, because DSD met the fact-intensive definition of a "dealer" under the WFDL, DSD's distributorship may not be terminated by Hansen on the grounds asserted by Hansen.  Otherwise Hansen could have terminated DSD pursuant to the

---

[5] Notably, no controlling Ninth Circuit opinion has declared this rule of decision.  In *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664-665 (9th Cir. 2004), the Ninth Circuit decided that because the plaintiff sought to reopen the arbitration award by relitigating the same claims in court, the amount in controversy was the amount at issue in the underlying arbitration.  The court noted, "*[i]f* we measure the amount in controversy . . . by the amount of the arbitration award, the district court lacked subject matter jurisdiction."  *Id*. at 661 (emphasis added).  But the court then determined on, based on the facts of that case, that the proper measure of the amount in controversy **was not** the amount of the arbitration award.

terms of the Distribution Agreement and California law, to DSD's significant, admitted financial detriment. The value of the right to not be terminated? According to DSD's evidence, it is at least $850,000, well above the amount in controversy requirement.

**B.  The Amount of DSD's Challenge to the Final Award**

Even if the value of the "amount of the award" were zero (which it is not), the amount in controversy requirement is nevertheless satisfied because DSD seeks to reopen the arbitration and obtain a damage award of approximately $1.7 Million. *See Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664-665 (9th Cir. 2004), and cases cited therein. In *Theis*, the Ninth Circuit cited and relied on decisions from other circuits holding that, where a party seeking to vacate an arbitration award also asks the court essentially to reopen the claim and grant a remedy that satisfies the jurisdictional minimum, subject matter diversity jurisdiction exists even if the dollar amount of the challenged award is zero.

Here, it is not mere supposition, but a certainty, that DSD seeks to reopen the Final Award and obtain monetary relief in excess of the jurisdictional minimum. DSD filed precisely that motion in the Wisconsin Court Action, and is simply doing a procedural forum-shopping tapdance in order to hold off filing that motion in this Court. (Indeed, DSD admits in its motion here that this action and the action in Wisconsin "are essentially identical." DSD's Motion, 8:19). DSD thus finds itself speaking out of both sides of its corporate mouth. Out of one side, DSD contends in its motion that the amount in controversy for purposes of confirmation of the Final Award is zero. But out of the other side, DSD admits, indeed insists, that the amount in controversy is the "corrected" award in the amount of $1.7 Million. DSD is judicially (and ethically) estopped from contending that judicial review of the Final Award does not meet the amount in controversy requirement.

### IV.

### ABSTENTION IS NOT APPROPRIATE

---

Instead, it was the amount at issue in the underlying arbitration. Thus, *Theis* does not hold that the amount

### A. Confirmation (or Vacatur) of the Final Award Implicates Important *California* Interests

The Distribution Agreement provides that it shall be governed by California law. Distribution Agreement, § 18, Exhibit 2 to Schierling Decl. #1. Thus, California law (or federal law), **but not Wisconsin law**, controls enforcement of the Final Award.[6]

California's Arbitration Act embodies the strong public policy of California. *Valsan Partners Ltd. Partnership v. Calcor Space Facility* (1994) 25 Cal.App.4th 809, 816. DSD's motion here seeks to thwart that policy. DSD already attempted once to sidestep its obligation to arbitrate in California, and its present strategy of attacking jurisdiction in California so that it can instead challenge the ***California*** arbitration award in Wisconsin is simply more of the same.

### B. There Are No On-Going State Proceedings In Wisconsin

DSD should not derive any advantage from its preemptive rush to court in Wisconsin in July 2007 because DSD made that tactical move in blatant violation of its obligation to arbitrate pursuant to the Distribution Agreement. DSD's intentional disregard for its contractual agreement was all the more unjustified considering arbitration proceedings were already underway in California when DSD ran to court. Appropriately, the Wisconsin court held DSD to its contract and stayed the Wisconsin Court Action to permit arbitration in California. The Wisconsin Court Action remained in abeyance until DSD attempted once again—by filing its motion for partial vacation of the Final Award—to secure a home court advantage that it validly waived when it agreed to arbitrate in California under California law.[7]

---

of the arbitration award is the amount in controversy.

[6] In accordance with California conflicts-of-laws principles, because the WFDL embodies fundamental public policy of Wisconsin, the Arbitrator disregarded the California choice of law provision to the limited extent that the WFDL conflicts with California law, i.e., on the issue of protection against termination of the distributorship. *See* Exhibit 1 to Schierling Decl., a copy of DSD's motion for partial vacation, specifically, Exhibit "F" to the Affidavit of Julie Lewis, a copy of the Arbitrator's decision on the choice of law issue.

[7] DSD's complaints about the inconvenience of a California forum carry no weight. DSD, a long standing established commercial enterprise, agreed to resolve its disputes in arbitration in California. In doing so, it

1  DSD argues that this matter involves Wisconsin public policy and suggests that the Wisconsin court has an active interest in reviewing the Final Award. No one could speak with more authority to refute these contentions than Judge Forbeck himself, and he has done so loud and clear. Judge Forbeck believes that "hearing[s] . . . regarding the arbitrator's decision" should take place here, in this Court, "without intervention" by the Wisconsin court. Judge Forbeck has expressly and unequivocally abstained and deferred to this Court.

In short, arbitral review of the Final Award does not implicate important Wisconsin state interests of Wisconsin and there are no ongoing state proceedings in Wisconsin. Thus, abstention is not warranted. Arbitration is meant to achieve a speedy and relatively inexpensive means of dispute resolution. Hansen urges this Court to give effect to that purpose by dismissing DSD's motion and setting a briefing schedule on Hansen's petition to confirm the Final Award.

## V.

## CONCLUSION

This case belongs here in California, before this Court. The Wisconsin State Court agrees. DSD's motion must fail.

DATED: May 23, 2008                SOLOMON WARD SEIDENWURM & SMITH, LLP

By: /s/ Tanya M. Schierling
RICHARD E. MCCARTHY
TANYA M. SCHIERLING
Attorneys for Petitioner Hansen Beverage Company

---

consented to jurisdiction and waived any objection to a California forum. *See* Code Civ. Proc. § 1293 ("[t]he making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by making any orders provided for in this title and by entering of judgment on an award under the agreement.").

|   |   |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I caused the **HANSEN BEVERAGE COMPANY'S OPPOSITION TO MOTION TO** |
| 3 | **DISMISS OR STAY PETITION TO CONFIRM ARBITRATION AWARD** to be served in the |
| 4 | following manner: |
| 5 | **Electronic Mail Notice List** |
| 6 | The following are those who are currently on the list to receive e-mail notices for this |
| 7 | case. |
| 8 | **Electronic Mail Notice List** |

Leila Nourani, Esq.
Michael B. McCollum, Esq.
Foley & Lardner
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone:  (213) 972-4500
Facsimile:  (213) 486-0065
lnourani@foley.com
mmccolum@foley.com
Attorneys for Defendant
DSD Distributors, Inc.

Julie A. Lewis
Nowlan & Mouat, LLP
100 South Main Street
P.O. Box 8100
Janesville, WI 53547-8100
Telephone:  (608) 755-8100
Facsimile:   (608) 755-8110
jlewis@nowlan.com
Attorneys for DSD Distributors, Inc.

*/s/ Tanya M. Schierling*
TANYA M. SCHIERLING