# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, a Delaware corporation, | CASE NO. 08cv0619-LAB (RBB) |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR STAY PETITION TO CONFIRM ARBITRATION AWARD** |
| vs. | |
| DSD DISTRIBUTORS, INC., a Wisconsin Corporation, | [DOC. NO. 5] |
| Defendant. | |

This action for confirmation of an arbitration award, relying on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and the parties' contractual arbitration provision, is before the Court on the motion of Defendant DSD Distributors, Inc. to dismiss or stay Plaintiff Hansen Beverage Company's Petition To Confirm Arbitration Award. Defendant asserts that this Court lacks subject matter jurisdiction because Plaintiff cannot meet the amount-in-controversy requirement to obtain diversity jurisdiction. DSD further contends the case should be dismissed or stayed pending resolution of a parallel Wisconsin state court action to partially vacate the arbitration award.

Defendant's Motion [doc. no. 5] was filed on April 16, 2008, and an Opposition [doc. no. 7] was filed by Plaintiff on May 23, 2008. On June 2, 2008, DSD filed a Reply [doc. no.

1  9]. The Motion was thereafter taken under submission pursuant to Civil Local Rule 7.1(d)(1).

2  [Doc. No. 10.] After the Motion as taken under submission, Hansen filed an Ex Parte

3  Application requesting permission to file a short surreply [doc. no. 11], which Defendant

4  opposed [doc. no. 15]. Hansen's Ex Parte Application is hereby GRANTED; the Court has

5  considered both the Surreply and DSD's Response in deciding the present Motion. Finally,

6  Defendant has also filed a Supplemental Declaration of Julie Lewis [doc. no. 16], a Second

7  Supplemental Declaration of Julie Lewis [doc. no. 17], and a Supplemental Declaration of

8  Leila Nourani [doc. no. 18]. Defendant's three supplemental declarations were filed to

9  update the Court regarding the status of the proceedings in Wisconsin state court.

10      Defendant's Motion contains a request that the Court take judicial notice of the

11  documents attached to the Declaration of Leila Nourani. (DSD's Mem. P. & A. Supp. Mot.

12  2 n.1.) Plaintiff objects to the Exhibit A to the Nourani declaration, which is a Motion filed in

13  Wisconsin state court dated April 4, 2008 with exhibits attached. (See Hansen's Objection

14  to Request for Judicial Notice [doc. no. 7-4].) Hansen alleges the document is not complete

15  because several of the exhibits are not attached. A complete copy of the document is

16  attached as Exhibit 1 to the Declaration of Tanya Schierling [doc. no. 7-2]. Plaintiff's

17  objection is sustained; the Court will consider the complete Motion attached to the Schierling

18  declaration rather than the abridged version attached to the Nourani declaration. The

19  remaining documents of which judicial notice is requested consist of documents, including

20  motions and orders, filed in the Wisconsin state court action and a separate lawsuit in the

21  Central District of California. The Court grants the parties' requests to take judicial notice

22  of these documents. See Kolocotronis v. Benefits Health Care, 2007 WL 2710366, at *3 n.3

23  (D. Mont. Sept. 13, 2007) (citing inter alia Smith v. Duncan, 297 F.3d 809, 815 (9th Cir.

24  2002) ("The Court may take judicial notice of matters of public record . . . , including

25  pleadings or documents filed in state or federal courts").

26      After reviewing the arguments of counsel and the evidence submitted, and for the

27  reasons expressed below, Defendant's Motion is GRANTED.

28  //

## I.      **Background**

Plaintiff Hansen Beverage Company is a beverage manufacturer based in California, and Defendant DSD is a beverage distributor in Wisconsin.  On December 1, 2004, the parties entered a distribution agreement, under which DSD was permitted to distribute eight specifically-listed Hansen products, including three products in the "Monster Energy" line, in certain areas of Wisconsin.  (See Distrib. Agreement Exs. A, B.)  The contract included an arbitration provision which provided that any disputes arising from the contract would be settled by binding arbitration "conducted by JAMS/Endispute ('JAMS')  in accordance with JAMS Comprehensive Arbitration Rules and Procedures" in California. (Distrib. Agreement ¶ 19.) It further provided, "Judgment upon any award rendered may be entered in any court having jurisdiction thereof."  (Id.)

On April 25, 2007, Hansen served DSD with a demand for arbitration in San Diego, California.  (Schierling Decl. Ex. 1 at 54-55.)  Plaintiff alleged DSD had breached the distribution agreement by distributing a competing product.  (Id. at 25, 35.)  Hansen sought damages for breach of contract and a declaration that the Wisconsin Fair Dealership Law did not apply to the parties' business relationship and Hansen was entitled to terminate the distribution contract.  (Id. at 59-60.)  The same day, Hansen also filed a complaint in the U.S. District Court for the Central District of California seeking a declaration that the arbitration clause was valid, enforceable, and binding with regard to the parties' dispute.  (Id. at 30-38.)  Thereafter, DSD filed suit in Wisconsin state court on July 20, 2007, seeking a declaration that the Wisconsin Fair Dealership Law applied to the dispute. (Schierling Decl. Ex. 2 at 2.)  DSD also sought a temporary injunction preventing any other distributors from distributing Hansen products within DSD's territory.   (Id. at 11-13.)   Upon Hansen's motion, the Wisconsin state court stayed proceedings to permit the arbitration and the federal lawsuit pending in the Central District to go forward.  (Nourani Decl. Exs. C, D.)

The parties proceeded to arbitration before the Honorable J. Richard Haden, retired judge and arbitrator for JAMS.  An evidentiary hearing was held on January 22-25, 2008, and an interim award was issued on February 21, 2008.  Due to the arbitration, the action in the

1    Central District was dismissed as moot on April 1, 2008.  (Nourani Decl. Ex. F.)  In the
2    arbitration proceedings, DSD asserted that Hansen's breach of contract claims were without
3    merit, and additionally it sought a determination that DSD was entitled to distribute a new
4    product manufactured by Hansen -- "Java Monster" -- and that Hansen had constructively
5    terminated the contract by hiring a different distributor for Java Monster in DSD's exclusive
6    territory.  (Id. at 72-75.)

7         The final arbitration award was issued on April 4, 2008.  (See Final Award [doc. no.
8    4, filed under seal].)   The arbitrator found DSD was protected as a "dealer" under the
9    Wisconsin Fair Dealership Law, DSD had not breached the dealership contract, and Hansen
10   did not have good cause to terminate the contract.  (Final Award at 17-18.)  Judge Haden
11   also found, however, that DSD was not entitled to distribute the Java Monster product and
12   Hansen did not constructively terminate the contract.  (Id. at 18.)  Thus, no monetary
13   damages or attorneys' fees were awarded to either party.  (Id.)

14        On April 4, 2008, the day the final arbitration award was issued, DSD filed a motion
15   in the Wisconsin state court action to partially vacate or modify the award, alleging that the
16   denial of damages or attorneys' fees to DSD violated Wisconsin public policy.  (Schierling
17   Decl. ¶ 2, Ex. 1.) Also on April 4, 2008, Hansen filed its Petition to Confirm Arbitration Award
18   in this Court.  The present Motion to Dismiss or Stay was filed on April 16, 2008.

19        On May 15, 2008, the Wisconsin state court issued an order declining to exercise
20   jurisdiction over Defendant's motion to partially vacate the arbitration award.  (Lewis Decl.
21   Supp. Reply Ex. A at 5-7.)  The order stated the following:

22        [I]t is my opinion that the arbitration should be completed and finalized in
          Federal Court in the State of California without intervention of this Court.  After
23        the matter has been completed, if there still exists issues to be determined by
          this Court, we will entertain those issues.  However, to do so at this point is
24        premature.

25        It is my understanding that there will be a hearing in federal court regarding the
          arbitrator's decision.  It is my further understanding that that will take place in
26        June, 2008.  After the determination has been made, any party who wishes to
          come before this Court for what you believe would be further relief under the
27        jurisdiction of this Court may do so.

28   (Id. at 7.)  DSD petitioned for leave to appeal the Wisconsin court's order, but leave to

                                        - 4 -                            08cv0619

1  appeal was denied.  (Id. at 3; Supplemental Lewis Decl. Ex. A.)  DSD then moved for

2  reconsideration, which was denied on August 26, 2008.  (Supplemental Nourani Decl. Ex.

3  A.)

4  **II.      Discussion**

5        **A.      Actions to Confirm Arbitration Awards**

6        Arbitration awards only have force and effect when they are converted into a court

7  order or judgment through a petition to confirm.  When presented with a petition to confirm

8  an award, the district court "must grant such an order unless the award is vacated, modified,

9  or corrected . . . ."  Id.  "The Federal Arbitration Act, 9 U.S.C. §§ 1-16, enumerates limited

10  grounds on which a federal court may vacate, modify or correct an arbitral award.  Neither

11  erroneous legal conclusions nor unsubstantiated factual findings justify federal court review

12  of an arbitral award under the statute, which is unambiguous in this regard."  Kyocera Corp.

13  v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003) (en banc).  "Under

14  the statute, confirmation is required even in the face of erroneous findings of fact and

15  misinterpretations of law."  Id. at 997 (internal quotation marks and citation omitted).

16        An application or motion to confirm, vacate, or modify an arbitration award may be

17  made to the district court "for the district in which the award was made," unless the parties

18  have agreed otherwise.  9 U.S.C. §§ 9, 10, 11.  Nevertheless, a federal court has power to

19  enter judgment on an arbitration award only if an independent basis for federal jurisdiction

20  exists, because the FAA does not confer subject matter jurisdiction on the district court.  9

21  U.S.C. § 9.

22        **B.      Subject Matter Jurisdiction**

23        The federal court is one of limited jurisdiction.  Gould v. Mutual Life Ins. Co. of New

24  York, 790 F.2d 769, 774 (9th Cir. 1986).   The Court possess only that power authorized by

25  the Constitution or a statute.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541

26  (1986).  It is presumed that a cause lies outside this limited jurisdiction.  Turner v. President

27  of Bank of N. Am., 4 U.S. (Dall.) 8, 11 (1799).  The burden of establishing subject matter

28  jurisdiction is on the party asserting it.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511

1  U.S. 375, 377 (1994).  The party asserting jurisdiction in this case is the plaintiff, as Hansen

2  commenced the instant action in this court.  Tosco Corp. v. Communities For A Better Env't,

3  236 F.3d 495, 499 (9th Cir. 2001) (quoting Smith v. McCullough, 270 U.S. 456, 459 (1926))

4  ("A plaintiff suing in federal court must show in his pleading, affirmatively and distinctly, the

5  existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court,

6  on having the defect called to its attention or on discovering the same, must dismiss the

7  case, unless the defect be corrected by amendment."). The court cannot reach the merits

8  of any dispute until it confirms its own subject matter jurisdiction.  Steel Co. v. Citizens for

9  a Better Env't, 523 U.S. 83, 93-94 (1998).  "Jurisdiction is power to declare the law, and

10  when it ceases to exist, the only function remaining to the court is that of announcing the fact

11  and dismissing the cause."  Id. (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514

12  (1868)).

13  DSD contends this action must be dismissed with prejudice because the Court lacks

14  subject matter jurisdiction over Hansen's Petition to Confirm Arbitration Award.  Although the

15  FAA creates substantive law governing arbitration agreements, the statute does not confer

16  subject matter jurisdiction on the federal courts.  Southland Corp. v. Keating, 465 U.S. 1, 16

17  (1984); Carter v. Health Net of Cal., Inc., 374 F.3d 830, 833 (9th Cir. 2004).  Accordingly, a

18  petition under the FAA to confirm, vacate, or modify an arbitration award may be brought in

19  federal court only if an independent basis of jurisdiction exists.  Hansen claims that the Court

20  has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

21  (Pet. to Confirm Arbitration Award ¶ 1.)

22  In order to establish federal jurisdiction under § 1332, Hansen must establish that the

23  plaintiff and the defendant are citizens of different states and that the amount in controversy

24  exceeds $75,000. 28 U.S.C. § 1332. DSD agrees the first element – diversity of citizenship

25  – is satisfied, but Defendant alleges the amount in controversy requirement is not met

26  because Hansen's Petition seeks to confirm an arbitration award for zero damages, thus

27  making the amount in controversy equal zero.  (DSD's Mem. P. & A. Supp. Mot. 5-6.)

28  Hansen claims the $75,000 amount-in-controversy requirement is met, even though no

1   monetary damages were awarded in the arbitration, because included in the final award was

2   a determination that Hansen could not terminate DSD's distributorship, and DSD values its

3   distribution rights at approximately $850,000.  (Pl.'s Opp'n 3, 5.)  Additionally, Hansen

4   contends the amount-in-controversy requirement is satisfied "because DSD seeks to reopen

5   the arbitration and obtain a damage award of approximately $1.7 Million."  (Id. at 5.)

6        In Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 661 (9th Cir. 2005), the Ninth

7   Circuit was asked to determine whether the amount-in-controversy requirement for diversity

8   jurisdiction was "measured by the amount of the [arbitration] award or by the amount in

9   dispute in the underlying litigation between the parties."  The plaintiff had moved to vacate

10   an arbitration award of zero dollars, and at the same time the plaintiff also filed a complaint

11   seeking damages for substantially the same claims asserted in the underlying arbitration.

12   Id.  The court held that the amount in controversy was met because the plaintiff was seeking

13   to obtain $200 million in damages, which equated to a request to reopen its arbitrated

14   claims:  "Although neither Theis nor B & B asked that the arbitration proceedings be

15   reopened, Theis sought to obtain by its district court complaint substantially what it had

16   sought to obtain in the arbitration.  Theis simply chose to 'reopen' its claims in the district

17   court rather than in arbitration."  Id. at 665.

18        In reaching its conclusion, the Theis Research court noted that there is a split among

19   the circuits on this issue, and in general "the cases have turned upon whether the party

20   seeking to vacate an arbitration award also sought to reopen the arbitration."  Id. at 664

21   (citing cases).  The court cited Baltin v. Alaron Trading Corp., 128 F.3d 1466 (11th Cir.

22   1997), in which the court found the amount in controversy was not met where the plaintiffs

23   sought to vacate an arbitration award requiring them to pay $36,284.69 but did not seek to

24   reopen arbitration, because "[t]he maximum remedy sought by the Baltins was the vacatur

25   of the arbitration award" which did not meet the jurisdictional minimum.  Theis Research, 400

26   F.3d at 665.

27        The same result was reached in Ford v. Hamilton Investments, Inc., 29 F.3d 255 (6th

28   Cir. 1994), because the plaintiffs sought only to vacate a $30,524 arbitration award and

neither party sought additional damages.  <u>Theis Research</u>, 400 F.3d at 665.  The court in <u>Ford</u> "was quite clear that had the losing party sought to challenge the arbitrator's denial of that party's counterclaims," which were valued over the jurisdictional minimum, then the amount in controversy would have been met.  <u>Id.</u> (citing <u>Ford</u>, 29 F.3d at 260; <u>accord Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 431 F.3d 1320 (11th Cir. 2005) (holding amount in controversy was met where plaintiff sought to vacate a zero-dollar award <u>and</u> requested a new hearing before a different arbitration panel where he would seek recovery of up to $2 million).

"When a petitioner seeks confirmation or vacatur of an award, without seeking a remand for further arbitration proceedings, 'the amount in controversy is the value of the award itself to the petitioner.'"  <u>Wise v. Marriott Int'l, Inc.</u>, 2007 WL 2200704, at *4 (S.D.N.Y. July 30, 2007) (quoting <u>N. Am. Thought Combine, Inc. v. Kelly</u>, 249 F. Supp. 2d 283, 285 (S.D.N.Y. 2003)).  If Hansen obtains all the relief requested in its Petition to Confirm Arbitration Award, it will receive zero dollars.  Likewise, DSD will receive zero dollars.  Thus, this case differs significantly from <u>Theis Research</u> and others were the amount-in-controversy requirement was satisfied by reference to damages sought in the underlying arbitration.  In the present case, neither of the parties are asking this Court for an order reopening arbitration or awarding damages.  Contrary to Plaintiff's assertion, DSD has not sought to reopen arbitration proceedings through the litigation in this Court.  The Court notes that the situation might be different if DSD were pursuing a motion to vacate the award and reopen arbitration in this Court rather than Wisconsin state court.  However, the only thing pending before this Court is Hansen's request to confirm a zero-dollar arbitration award.  <u>See Theis Research</u>, 400 F.3d at 664 (finding that "the amount in controversy is the amount Theis sought to recover by its complaint.").

Plaintiff also asserts that the arbitration award included the equivalent of a "declaratory judgment" that DSD's distributorship cannot be terminated by Hansen.  (Pl.'s Opp'n 5.)  Thus, Plaintiff contends the Court must look at the value of the distributorship rights in determining the amount in controversy.  (<u>Id.</u>)  "In actions seeking declaratory or

1    injunctive relief, it is well established that the amount in controversy is measured by the value

2    of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347

3    (1977) (citations omitted).  The "object of the litigation" is measured by the "pecuniary result

4    to either party which the judgement would directly produce."  In re Ford Motor Co./Citibank

5    (South Dakota), N.A., 254 F.3d 952, 958 (9th Cir. 2001) (citing Ridder Bros., Inc. v. Blethen,

6    142 F.2d 395, 399 (9th Cir. 1994)).  Under this reasoning, Hansen believes the amount in

7    controversy is $850,000 because DSD's expert estimated the company's existing distribution

8    rights at that value.  (Pl.'s Opp'n 4-5 & n.4.)

9         Hansen's argument is unavailing because a petition to confirm an arbitration award

10   is fundamentally different from a complaint for declaratory relief.  Cf. X-Rite, Inc. v. Volk,

11   2008 WL 1913926, at *1 (W.D. Mich. Apr. 28, 2008) (stating that arbitration suits "are on a

12   different legal footing than declaratory actions").  The final arbitration award included findings

13   that DSD was a "dealer" under Wisconsin law and that Hansen had not shown good cause

14   to terminate the distributorship contract.  The award did not provide a declaration that DSD

15   is entitled to retain its distributorship contract in perpetuity.  Any effects that flow from the

16   arbitrator's determination of the rights of the parties, including the continuation of the

17   distributor arrangement or the future termination of the contract, are collateral consequences

18   of the arbitration award.  "[J]urisdiction depends upon the matter directly in dispute in the

19   particular cause, and the court is not permitted, for the purpose of determining its sum or

20   value, to estimate its collateral effect." Quinault Tribe of Indians v. Gallagher, 368 F.2d 648

21   (9th Cir. 1966) (citations omitted).  Future profits to be gained from the distribution contract

22   are collateral to the present case and cannot be considered in determining the amount in

23   controversy for jurisdictional purposes.  Because DSD's earnings under the distribution

24   contract are not directly at stake in this litigation, Hansen cannot establish the amount in

25   controversy requirement by relying on the value of the company's distribution rights.

26   **III.    Conclusion**

27        For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to

28   dismiss for lack of subject matter jurisdiction is **GRANTED**.  Because the Court finds that it

lacks jurisdiction, it need not consider Defendant's alternate argument that the case should be stayed under doctrines of judicial abstention.

**IT IS SO ORDERED**.

DATED:  December 12, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge